# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

**No. 20-1315**

**September Term, 2021**

FILED ON: MARCH 15, 2022

LOUISIANA PUBLIC SERVICE COMMISSION,
      PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
      RESPONDENT

ARKANSAS PUBLIC SERVICE COMMISSION; ENTERGY ARKANSAS, LLC; ENTERGY CORPORATION; ENTERGY LOUISIANA, LLC; ENTERGY MISSISSIPPI, LLC; ENTERGY NEW ORLEANS, LLC; ENTERGY SERVICES, LLC; ENTERGY TEXAS, INC.,
      INTERVENORS

Consolidated with 21-1029

On Petition for Review of Orders
of the Federal Energy Regulatory Commission

Before: HENDERSON and WALKER, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

## J U D G M E N T

This petition for review of orders of the Federal Energy Regulatory Commission was presented to the court and briefed and argued by counsel. The court has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. CIR. R. 36(d). For the reasons set out below, it is

**ORDERED** and **ADJUDGED** that the petition for review be **DENIED**.

The Louisiana Public Service Commission petitions for judicial review of orders of the Federal Energy Regulatory Commission regarding cost allocation among Entergy Corporation's operating companies. At the time relevant to this proceeding, the Entergy operating companies were six utilities in four states — Entergy Arkansas, Inc., Entergy Gulf States Louisiana, LLC, Entergy Louisiana, LLC, Entergy Mississippi, Inc., Entergy Texas, Inc., and Entergy New Orleans, Inc.

*Opinion No. 560*, 162 FERC ¶ 61,234, at P. 1 n.2 (2018).[1]  The companies operated according to the Entergy System Agreement, "which required the six utilities to plan and operate their facilities as a single electric system." *La. Pub. Serv. Comm'n v. FERC*, 20 F.4th 1, 4 (D.C. Cir. 2021).  "FERC mandated that production costs among the utilities be roughly equal." *Id.*

After FERC determined that the System Agreement "no longer produced rough cost production equalization," FERC "ordered modifications designed to maintain roughly equal production costs between the Operating Companies within +/-11 percent of the system-wide average." *Opinion No. 560*, at P. 2.  To achieve compliance with FERC's mandate, Entergy adopted the so-called "bandwidth" remedy.  *Id.*  The bandwidth remedy "provides that when an Operating Company's production costs deviate more than 11 percent above or below the Entergy System's average on an annual basis, the Operating Companies with the lower costs will make payments . . . to the ones with higher costs such that their overall costs return to rough equalization." *La. Pub. Serv. Comm'n v. FERC*, 866 F.3d 426, 427 (D.C. Cir. 2017).

The focus of Louisiana's petition is a single input to the formula used to calculate the production costs of one Entergy operating company, the former Entergy Louisiana, LLC.  When the parent Entergy calculated Entergy Louisiana's production costs, it did not include certain accumulated deferred income tax[2] amounts related to a sale/leaseback transaction involving the Waterford 3 nuclear power plant owned by Entergy Louisiana.  FERC initially concluded that the exclusion of such amounts from the formula was not erroneous.  *Opinion No. 505*, 130 FERC ¶ 61,023, at P. 233 (2010).

In 2020, FERC changed its view with respect to the "tax gain" portion of the amounts but not the "additional interest" portion.  *Order Granting, in Part, and Denying in Part, Rehearing*, 171 FERC ¶ 61,044, at PP. 43–46 (2020) ("*First Rehearing Order*").  FERC ordered Entergy Corporation to correct its bandwidth calculations, but only for the fourth through seventh bandwidth proceedings — which correspond to test years 2009, 2010, and 2011. *Id.* at P. 46; *Order Addressing Arguments Raised on Rehearing, & Setting Aside Prior Order, in Part, & Directing Further Compliance*, 173 FERC ¶ 61,152, at P. 44 (2020) ("*Second Rehearing Order*").

FERC denied Louisiana's request to require correction in the first, second, and third bandwidth proceedings (test years 2006, 2007, and 2008).  *Second Rehearing Order*, at P. 46.  Louisiana claims this was error.

FERC's 2015 order had established the temporal scope of the bandwidth remedy Louisiana sought in its complaint and request for rehearing.  *Order Denying Rehearing*, 153 FERC ¶ 61,304, at P. 24 (2015); J.A. 146 (complaint); J.A. 380 (request for rehearing).  Corrections were limited to the fourth and later bandwidth proceedings.  Louisiana did not seek rehearing of that determination.

---

[1] Since then, Entergy Gulf States Louisiana, LLC and the former Entergy Louisiana, LLC have been combined into a single entity called Entergy Louisiana, LLC.  *See Opinion No. 560*, at P. 1 n.2; *see also* L.A. 524 n.3.

[2] The parties refer to accumulated deferred income tax as "ADIT."

*Second Rehearing Order*, at P. 46. In arguing against FERC's decision, Louisiana asserts — in a post-argument motion in this court — that had the relevant costs been included in the calculation, Entergy Louisiana would have received additional bandwidth remedy payments from Entergy Arkansas, LLC and those payments would have been passed on to Louisiana retail ratepayers.

Under Federal Power Act § 313, "[a]ny person, electric utility, State, municipality, or State commission aggrieved by" a FERC order has thirty days to apply for rehearing. 16 U.S.C. § 825*l*(a). When FERC denies a rehearing application, the aggrieved party has sixty days to petition for judicial review. *Id.* § 825*l*(b). An aggrieved party's timely rehearing request is a prerequisite to judicial review.

FERC treated Louisiana's failure to seek rehearing of the 2015 order as a bar to reconsideration of the recalculation period. It was entitled to do so. *See City of Nephi v. FERC*, 147 F.3d 929, 934 (D.C. Cir. 1998); *ANR Pipeline Co. v. FERC*, 988 F.2d 1229, 1231–35 (D.C. Cir. 1993).[3] The federal courts have a comparable doctrine known as "law of the case": "the *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result*." *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (en banc). Louisiana complains that the 2015 order was not final, and therefore no rehearing application was required. But FERC, interpreting its rules of procedure, 18 C.F.R. § 385.713(a)(2), was well within its discretion to treat it as such. *Second Rehearing Order*, at P. 46 & n.130; *see Kisor v. Wilkie*, 139 S. Ct. 2400, 2415–18 (2019). FERC also stressed that it was Louisiana that proposed making the bandwidth prospective from June 1, 2010, the effective date of the fourth bandwidth proceeding. *Second Rehearing Order*, at P. 46 & nn.128–29. Here again there is a comparable discretionary doctrine in the federal courts — the doctrine of "judicial estoppel."[4]

For these reasons we deny Louisiana's petition.

\* \* \*

---

[3] Although *ANR Pipeline Co.* is a proceeding under the Natural Gas Act, 988 F.2d at 1231–32, "[w]e follow here the familiar practice of applying interchangeably judicial interpretations of provisions from the Natural Gas Act to their substantially identical counterparts in the Federal Power Act." *NSTAR Elec. & Gas Corp. v. FERC*, 481 F.3d 794, 800 (D.C. Cir. 2007) (internal quotation marks omitted).

[4] *See, e.g.*, *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (internal quotation marks and citations omitted):

> [S]everal factors typically inform the decision whether to apply the doctrine in a particular case: First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity.

This disposition is unpublished. *See* D.C. C<small>IR</small>. R. 36(d). We direct the Clerk to withhold the mandate until seven days after any timely petition for rehearing or rehearing *en banc* is resolved. *See* F<small>ED</small>. R. A<small>PP</small>. P. 41(b); D.C. C<small>IR</small>. R. 41(a)(1).

## Per Curiam

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:   /s/
Daniel J. Reidy
Deputy Clerk